# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **HEATHER L. EGAN,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:06cv00037 |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| **MICHAEL J. ASTRUE,**[1] | ) | |
| **Commissioner of Social Security,** | ) | By:   PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

In this social security case, I will vacate the final decision of the Commissioner denying benefits and remand this case to the Commissioner for further development.

*I. Background and Standard of Review*

Plaintiff, Heather L. Egan, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claims for supplemental security income, ("SSI"), and disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 and § 1381 *et seq.* (West 2003 & Supp. 2006). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007, and is, therefore, substituted for Jo Anne B. Barnhart as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d)(1).

-1-

transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Egan filed her applications for SSI and DIB on or about September 4, 2003, alleging disability as of August 11, 2003, based on back, leg and hip pain, depression, panic attacks and asthma. (Record, ("R."), at 61-63, 74, 110, 115, 321-23.) The claims were denied initially and on reconsideration. (R. at 34-36, 39, 41-43.) Egan then requested a hearing before an administrative law judge, ("ALJ"). (R. at 44.) The ALJ held a hearing on August 11, 2004, at which Egan was represented by counsel. (R. at 407-29.)

By decision dated September 2, 2004, the ALJ denied Egan's claims. (R. at 15-23.) The ALJ found that Egan met the nondisability insured status requirements of the Act for DIB purposes through the date of the decision. (R. at 22.) The ALJ found that Egan had not engaged in substantial gainful activity since the alleged onset of

disability. (R. at 22.) The ALJ found that the medical evidence established that Egan had severe impairments, namely chronic low back and sciatic pain and bronchitis, but he found that Egan's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 22.) The ALJ also found that Egan's allegations regarding her limitations were not totally credible. (R. at 22.) The ALJ found that Egan retained the residual functional capacity to perform work that did not require more than occasional lifting and carrying of items weighing up to 30 pounds and frequent lifting and carrying of items weighing up to 15 pounds, that did not require frequent bending, stooping or crouching, that did not require working around hazardous machinery or heights and that did not involve working in an environment that would expose her to heavy amounts of respiratory irritants. (R. at 20, 22.) Thus, the ALJ found that Egan could perform her past relevant work as a cashier. (R. at 22.) Therefore, the ALJ concluded that Egan was not disabled under the Act at any time through the date of the ALJ's decision, and that she was not eligible for benefits. (R. at 22-23.) *See* 20 C.F.R. §§ 404.1520(f), 416.920(f) (2006).

After the ALJ issued his decision, Egan pursued her administrative appeals, (R. at 11), but the Appeals Council denied her request for review. (R. at 5-8.) Egan then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2006). The case is before this court on Egan's motion for summary judgment filed September 29, 2006, and the Commissioner's motion for summary judgment filed November 1, 2006.

*II. Facts*

Egan was born in 1978, (R. at 61, 321), which classifies her as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Egan has a high school education and past work experience as a cook and a cashier. (R. at 75, 80, 92.)

Dr. Susan Bland, M.D., a medical expert, testified at Egan's hearing. (R. at 418-20, 425-27.) Dr. Bland testified that there was enough evidence to indicate that Egan had a chronic back problem that would warrant lifting limitations. (R. at 419.) She stated that Egan would be limited to occasionally lifting items weighing up to 30 pounds and frequently lifting items weighing up to 15 pounds. (R. at 419.) Dr. Bland testified that Egan could frequently bend, stoop and crouch. (R. at 419.) She stated that Egan could not climb ladders or work around unguarded heights or hazardous machinery. (R. at 419.) Dr. Bland also stated that Egan could not work around heavy amounts of dust, fumes, vapors or irritants. (R. at 419-20.) Dr. Bland stated that Egan's last physical therapy visit was normal, which suggested that there was not serious pathology in the spine. (R. at 425-27.)

Thomas Schacht, Ph.D., a medical expert, also testified at Egan's hearing. (R. at 420-23, 427.) Schacht testified that psychologist Spangler's diagnosis of borderline intellectual functioning, as well as marginal literacy with math and reading at the fourth-grade level, were inconsistent with Egan's school records. (R. at 420.) Schacht testified that there was substantial evidence in the record to show that Egan was noncompliant with her use of Zoloft. (R. at 422.) Schacht stated that the depression inventory and anxiety inventory administered to Egan had no validity scale

components to them because Egan rated herself on them. (R. at 422.) He also stated that Rosie Feagins's notes were not consistent with an impairment of that severity. (R. at 422.)

Donna Bardsley, a vocational expert, also was present and testified at Egan's hearing. (R. at 423-25, 427.) Bardsley was asked to consider a hypothetical individual of Egan's education, who had the residual functional capacity as described by Dr. Bland and who was limited in reading and math. (R. at 423-24.) Bardsley testified that such an individual could perform work as a hand packager, a sorter, an assembler and an inspector, all of which were simple, unskilled jobs. (R. at 424.) Bardsley stated that there would be jobs available that an individual could perform who was limited as described by Dr. Bland and who did not have a reading problem. (R. at 424.) She stated that the individual could perform jobs such as a sales clerk, a cashier, an information clerk and an order clerk. (R. at 425.) Bardsley stated that there would be no jobs available that an individual who was limited as described by Spangler could perform. (R. at 236-38, 427.)

In rendering his decision, the ALJ reviewed records from the Wise County Public Schools; Dr. E. Manoharan, M.D.; Holston Valley Medical Center; Clinch River Health Services; Dr. Todd A. Cassel, M.D.; 1st Step Rehab; Dr. F. Joseph Duckwall, M.D., a state agency physician; Dr. Randall Hays, M.D., a state agency physician; Holston Medical Group; Eugenie Hamilton, Ph.D., a state agency psychologist; Rosie Feagins, L.C.S.W., a licensed clinical social worker; Robert S. Spangler, Ed.D., a licensed psychologist; and Clinch River Pharmacy. Egan's attorney submitted records from Dr. Dennis M. Aguirre, M.D., Feagins and Dr. Cassel to the

Appeals Council.[2]

On October 19, 1998, Egan was seen at Holston Valley Medical Center following a motor vehicle accident. (R. at 144-47.) She complained of discomfort to her face and chest. (R. at 146.) It was noted that Egan did not complain of neck and back pain. (R. at 146.) X-rays of Egan's sternum and chest showed no abnormalities. (R. at 146.) Egan was diagnosed with multiple contusions. (R. at 147.)

On March 28, 2003, Dr. Todd A. Cassel, M.D., diagnosed Egan with bronchitis with bronchospasm and tobacco use. (R. at 159.) On April 4, 2003, Egan was diagnosed with bronchitis with bronchospasm and questionable walking pneumonia. (R. at 158.) On September 29, 2003, an MRI of Egan's lumbar spine was normal. (R. at 161.) On November 5, 2003, Egan complained of back pain. (R. at 150.) She reported that she had been tearful and irritable. (R. at 150.) Dr. Cassel reported that Egan was bent over with very poor posture. (R. at 150.) Egan had normal strength and reflexes. (R. at 150.) She was diagnosed with low back pain, sciatica and depression. (R. at 150.) On November 20, 2003, Dr. Cassel indicated that Egan was unable to work at any job due to persistent low back pain. (R. at 149.) On June 15, 2004, Egan reported that her right leg gave out and she slipped and fell heavily on her back and right buttock. (R. at 247.) She reported continued pain and radiation into her leg. (R. at 247.)

---

[2]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 5-8), the court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

On June 16, 2004, Dr. Cassel completed a medical assessment indicating that Egan could occasionally lift and carry items weighing up to 10 pounds and frequently lift and carry items weighing less than 10 pounds. (R. at 291-94.) He indicated that Egan could stand and/or walk at least two hours in an eight-hour workday. (R. at 291.) He indicated that Egan must periodically alternate between sitting and standing to relieve pain or discomfort. (R. at 292.) Dr. Cassel reported that Egan's ability to push and pull was limited in her lower extremities. (R. at 292.) He marked occasionally to never on Egan's ability to climb, kneel and stoop. (R. at 292.) He indicated that Egan could occasionally balance and never crouch or crawl. (R. at 292.) Dr. Cassel found no manipulative, visual, communicative or environmental limitations. (R. at 293-94.)

On July 20, 2004, Dr. Cassel reported that Egan's depression was aggravated by situational difficulties. (R. at 244.) On August 3, 2004, Egan complained of back pain. (R. at 243.) Dr. Cassel reported that Egan had tenderness along her back and shoulders, and that her posture was slumped over. (R. at 243.) He indicated that he was "not ready to say that she is disabled." (R. at 243.) He recommended that Egan continue counseling and therapy. (R. at 243.) On May 3, 2005, Dr. Cassel diagnosed migraine headaches, anxiety and back pain. (R. at 391.) On August 15, 2005, Dr. Cassel noted that Egan's affect was flat and depressed. (R. at 390.) Egan reported that her symptoms of depression were related to her back pain. (R. at 390.) He diagnosed chronic back pain and depression. (R. at 390.)

On October 29, 2002, Dr. F. Joseph Duckwall, M.D., a state agency physician, indicated that Egan had no exertional limitations. (R. at 180-87.) Dr. Duckwall

-7-

indicated that Egan had no postural, manipulative, visual, communicative or environmental limitations. (R. at 182-84.) This assessment was affirmed by Dr. Randall Hays, M.D., another state agency physician, on January 12, 2003. (R. at 187.)

On January 12, 2004, Eugenie Hamilton, Ph.D., a state agency psychologist, indicated that Egan suffered from a nonsevere affective disorder. (R. at 209-22.) Hamilton indicated that Egan had no limitations in her activities of daily living or in maintaining social functioning. (R. at 219.) She indicated that Egan had mild limitations in maintaining concentration, persistence or pace. (R. at 219.) Hamilton indicated that there was no evidence that Egan suffered from any episodes of decompensation. (R. at 219.)

Egan received individual therapy from Rosie Feagins, L.C.S.W., a licensed clinical social worker, from January 16, 2004, to August 15, 2005. (R. at 223-28, 295-319, 367-80.) On January 16, 2004, Egan reported suicidal ideation. (R. at 225.) Feagins diagnosed major depression and a panic disorder. (R. at 228.) Feagins indicated that Egan had a then-current Global Assessment of Functioning, ("GAF"), score of 48.[3] (R. at 228.) On January 23, 2004, Feagins described Egan's depression and anxiety as moderate. (R. at 224.) Egan continued to report suicidal ideation. (R. at 224.) On January 30, 2004, Egan's anxiety and depression were still reported as moderate. (R. at 223.) She denied suicidal ideation. (R. at 223.) Her mood was

---

[3]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32.

described as depressed and her affect blunted. (R. at 223.) Her judgment was rated good. (R. at 223.)

In June 2004, the Beck Anxiety Inventory screening device was administered, which indicated that Egan had a severe level of anxiety symptoms. (R. at 299-300.) The Beck Depression Inventory indicated that Egan suffered from extreme depression. (R. at 301-03.) Feagins completed a mental assessment indicating that Egan was seriously limited, but not precluded, in her ability to understand, remember and carry out simple and detailed instructions, to make judgments and to interact appropriately with co-workers. (R. at 304-05.) She indicated that Egan had no useful ability to interact appropriately with the public, to interact appropriately with supervisors, to respond appropriately to work pressures and to respond appropriately to changes in a routine work setting. (R. at 304-05.) Feagins indicated that Egan had significant problems staying on task and that she reacted to stress with decompensation, particularly suicidal ideation. (R. at 305.) She reported that she observed Egan's panic attacks and symptoms of depression with symptoms of low self-esteem and dependency. (R. at 305.)

On October 10, 2005, Feagins completed a mental assessment indicating that Egan had mild limitations in her ability to understand, remember and carry out simple instructions. (R. at 382-84.) She indicated that Egan had a satisfactory ability to understand, remember and carry out detailed instructions, to make judgments, to interact appropriately with the public, to interact appropriately with supervisors and to interact appropriately with co-workers. (R. at 382-83.) Feagins also indicated that Egan was seriously limited, but not precluded, in her ability to respond appropriately

to work pressures and to respond appropriately to changes in routine work settings. (R. at 382-83.) Feagins indicated that Egan had difficulty coping with problems, which caused a decrease in her ability to concentrate and solve problems. (R. at 383.)

On May 6, 2004, Robert S. Spangler, Ed.D., a licensed psychologist, evaluated Egan at the request of Egan's attorney. (R. at 229-33.) Spangler reported that Egan seemed socially confident, but anxious and depressed. (R. at 229.) Egan demonstrated erratic concentration secondary to anxiety. (R. at 229.) The Wechsler Adult Intelligence Scale-Third Edition, ("WAIS-III"), test was administered, and Egan obtained a verbal IQ score of 77, a performance IQ score of 85 and a full-scale IQ score of 79. (R. at 232, 234.) Spangler diagnosed panic disorder without agoraphobia, moderate, depressive disorder, not otherwise specified, moderate, nicotine dependence, borderline intelligence and mild erratic concentration. (R. at 232.) Spangler assessed Egan's GAF score at 55.[4] (R. at 232.)

Spangler completed a mental assessment indicating that Egan had a limited but satisfactory ability to a seriously limited, but not precluded, ability to follow work rules, to use judgment, to interact with supervisors, to function independently, to maintain attention/concentration and to maintain personal appearance. (R. at 236-38.) He indicated that Egan had a seriously limited, but not precluded, ability to relate to co-workers, to understand, remember and carry out detailed instructions, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 236-37.) Spangler found that Egan had a seriously

---

[4] A GAF of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

-10-

limited, but not precluded, to no useful ability to deal with work stresses. (R. at 236.) He found that Egan had a limited but satisfactory ability to understand, remember and carry out simple instructions. (R. at 237.) He also found that Egan had no useful ability to deal with the public and to understand, remember and carry out complex instructions. (R. at 236-37.) Spangler found that Egan could not manage her own benefits and that, on average, she could miss up to two days a month from work due to her impairments. (R. at 238.)

The record shows that Dr. Dennis M. Aguirre, M.D., treated Egan for her complaints of back pain from October 2004 through September 2005. (R. at 337-64.) In November 2004, an MRI of Egan's lumbar spine showed minor L4-5 and L5-S1 annular disc bulges and a cyst abutting the lateral aspect of the left L4-5 facet joints. (R. at 354.) Dr. Aguirre reported on numerous occasions that Egan's cervical range of motion was not impaired, she had full range of motion and motor strength was intact. (R. at 338, 341, 344-45, 362.) Egan demonstrated full range of motion of the lumbar spine. (R. at 338, 341, 344-45, 362.) Reflexes of the upper and lower extremities were intact. (R. at 338, 341, 344-45, 362.) In September 2005, Dr. Aguirre diagnosed lumbar spondylosis with some vague right radicular discomfort, bilateral L4-L5 and L5-S1 facet arthropathies and functional overlay compounded by depression. (R. at 338.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006); *see also Heckler v. Campbell*, 461 U.S.

-11-

Case 2:06-cv-00037-PMS   Document 16   Filed 03/08/07   Page 11 of 18   Pageid#: 102

458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2006).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2006); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated September 2, 2004, the ALJ denied Egan's claims. (R. at 15-23.) The ALJ found that the medical evidence established that Egan had severe impairments, namely chronic low back and sciatic pain and bronchitis, but he found that Egan's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 22.) The ALJ found that Egan retained the residual functional capacity to perform work that did not

-12-

require more than occasional lifting and carrying of items weighing up to 30 pounds and frequent lifting and carrying of items weighing up to 15 pounds, that did not require frequent bending, stooping or crouching, that did not require working around hazardous machinery or heights and that did not involve working in an environment that would expose her to heavy amounts of respiratory irritants. (R. at 20, 22.) Thus, the ALJ found that Egan could perform her past relevant work as a cashier. (R. at 22.) Therefore, the ALJ concluded that Egan was not disabled under the Act at any time through the date of the ALJ's decision, and that she was not eligible for benefits. (R. at 22-23.) *See* 20 C.F.R. §§ 404.1520(f), 416.920(f) (2006).

Egan argues that the ALJ erred by improperly determining her residual functional capacity. (Plaintiff's Motion For Summary Judgment And Memorandum Of Law, ("Plaintiff's Brief"), at 8-13.) Egan also argues that the ALJ erred by failing to find that she suffered from a severe mental impairment. (Plaintiff's Brief at 13-17.) Egan further argues that the ALJ erred in finding that her condition did not meet or equal the listed impairment for disorders of the spine, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. (Plaintiff's Brief at 17-18.)

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently

-13-

Case 2:06-cv-00037-PMS    Document 16    Filed 03/08/07    Page 13 of 18    Pageid#: 104

explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

Based on my review of the evidence, I find that substantial evidence exists in this record to support the ALJ's finding that Egan's condition did not meet or equal the impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1, §1.04(A). To meet § 1.04(A), a claimant must suffer from either a herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis or vertebral fracture, resulting in compromise of a nerve root or the spinal cord with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A) (2006). Also, the regulations specifically state that the responsibility for determining whether a claimant's condition meets or equals a listed impairment rests with the Commissioner.

*See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (2006).

The diagnostic medical evidence of record shows that Egan underwent numerous lumbar spine MRIs, all of which showed normal results. (R. at 161, 194, 207, 354, 357.) In November 2003, Dr. Cassel reported that Egan's neurologic examination remained normal to strength and reflex testing. (R. at 150.) He reported in April 2004 that Egan's low back pain with posture difficulties was stable. (R. at 249.) Dr. Cassel reported in July 2004 that Egan's nerve conduction study was normal, and that Egan had no weakness and that she had intact reflexes. (R. at 245.) In August 2004, Dr. Cassel reported that he was not ready to say that Egan was disabled and recommended that Egan continue therapy and counseling. (R. at 243.) In addition, Dr. Aguirre reported on a number of occasions that Egan could walk without difficulty, that she did not appear to be in any acute distress or discomfort, that she had a full range of motion of all joints and extremities without impairment or limitation, that she had normal motor strength in her lower extremities and that she had no gross weakness. (R. at 338, 341, 344-45, 362.)

Physical therapy notes show that Egan had essentially normal muscle strength for all major muscle groups, (R. at 193), and that she made consistent progress with her outpatient rehabilitation program. (R. at 193.) Physical therapy notes indicate that Egan was doing better overall with less lumbar pain and, eventually, Egan reported that her then-current level of pain was at zero. (R. at 259, 281.) Physical therapy notes further indicate that Egan's lumbar range of motion was within normal limits, that she had normal strength for all major muscle groups and that she had essentially normal reflexes. (R. at 259.) Based on this, I find that substantial evidence also exists to

-15-

support the ALJ's finding with regard to Egan's physical residual functional capacity.

Egan also argues that the ALJ erred by failing to find that she suffered from a severe mental impairment. (Plaintiff's Brief at 13-17.) The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a) (2006). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521(b), 416.921(b) (2006). The Fourth Circuit held in *Evans v. Heckler*, that, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (emphasis in original).

The ALJ noted that he had considered Spangler's opinion and found that it was a one-time evaluation and was not consistent with the treatment notes or school records. (R. at 19.) The ALJ also noted that he had considered Feagins's treatment notes and the results of the Beck Depression Inventory and Beck Anxiety Inventory. (R. at 18.) He rejected the results of the Beck Depression Inventory and Beck Anxiety Inventory because they were not consistent with Feagins's treatment notes. (R. at 18.) The ALJ indicated that he was relying on the testimony of Schacht and on the

-16-

assessment of state agency psychologist Hamilton in determining that Egan did not suffer from a severe mental impairment. (R. at 19.) Based on my review of the record, I do not find that substantial evidence exists to support this finding. The ALJ noted that he was relying on Hamilton's assessment in making his determination. (R. at 19.) On January 12, 2004, Hamilton completed a mental assessment indicating that Egan suffered from a nonsevere affective disorder that caused only mild limitations in Egan's ability to maintain concentration, persistence or pace. (R. at 219.) The record shows that Egan did not begin therapy with Feagins until January 16, 2004. (R. at 228.) Likewise, Spangler did not evaluate Egan until May 2004. (R. at 229-33.) Therefore, Hamilton did not have these records available to her prior to making her determination that Egan suffered from a nonsevere affective disorder.

While the ALJ also relied upon the testimony of Schacht in making his determination that Egan did not suffer from a severe mental impairment, it appears that Schacht dismissed Spangler's evaluation based on Spangler's diagnosis of borderline intelligence. (R. at 420.) Schacht did not give a reason for dismissing Spangler's diagnosis of panic disorder and depressive disorder. Furthermore, I find that Feagins's and Spangler's assessments are consistent in that both found that Egan had a seriously limited, but not precluded, ability to deal with work stresses. (R. at 236, 382-83.) Based on this, I do not find that substantial evidence exists to support the ALJ's finding that Egan did not suffer from a severe mental impairment.

*IV. Conclusion*

For the foregoing reasons, Egan's and the Commissioner's motions for

-17-

summary judgment will be denied, the Commissioner's decision denying benefits will be vacated, and this case will be remanded to the Commissioner for further development.

An appropriate order will be entered.

DATED:     This 8th day of March 2007.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE